# Dittey v. First National Bank of Hillsboro *et al.*

*Bill in Equity seeking to enjoin a Sale of Shares of Stock in a Corporation under Attachment.*

1. *Priority between transferee and attaching creditor of shares of stock in corporation; notice; case at bar.*—In a bill filed by the receiver of the transferee of certain shares of stock in a corporation, seeking to enjoin the sale thereof under an attachment issued at the instance of a banking corporation, which was a creditor of the transferrer, and which is alleged to have had notice of the transfer, though not recorded on the books of the corporation, where the testimony for the complainant shows that the transferee is an insolvent banking corporation and the transferrer its president, that at the time of the

[Dittey v. First National Bank of Hillsboro *et al.*]

failure of such corporation the transferrer conveyed to it a lot of property, among which were the shares in controversy, and he testified that at the time of such transfer he had repeated conversations with the cashier of the defendant bank, the attaching creditor, and told him he had made a conveyance of his property to the said insolvent bank, in part payment of the debt he owed said bank, but did not specifically mention the said shares of stock, and said cashier testified that he had not received information that said transferrer had transferred said shares of stock to said insolvent bank, denied any notice of the fact that said bank claimed said shares, and testified that the first information he had that the transferrer had sold the stock in question was through his attorneys after the attachment had been levied, and that he had no information that the transferrer owned the stock in question until so informed by his attorneys, and the other acting officers of the defendant testified that they knew nothing of such transfer, such evidence fails to show actual notice of the alleged transfer, or a state of facts exciting inquiry which, if followed up, would have led to a knowledge of the transfer; and the right of complainant to the relief prayed being dependent upon the proof of such notice or knowledge, the bill was properly dismissed.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. WILLIAM H. SIMPSON.

The appellant, Robert M. Dittey, as receiver of the Citizens' National Bank of Hillsboro, Ohio, filed the bill in this case on November 3, 1893, against the First National Bank of Hillsboro, Ohio, and the Scatcherd Lumber Company and Clarence M. Overman.

The facts averred in the bill were the following: Previous to the failure of the said Citizens' National Bank, which was closed by order of the Comptroller of the Currency, on the 9th day of June, 1893, said Overman executed an instrument, which was duly accepted by the officers of said bank, which provided that, in order to secure the payment of an indebtedness of said Overman to said bank to an amount of about ninety thousand dollars ($90,000), he transferred to said Citizens' National Bank certificates of stock of said Scatcherd Lumber Company, being numbers 4, 5 and 6, each for one hundred shares; number 7 for forty-eight shares, and numbers 8 and 9, each for one share, with the proviso that if said Overman should well and truly pay said indebtedness and save said bank from loss on account thereof, said transfer should be void; otherwise to remain in full force and effect. Said Overman has not paid his said indebtedness, but the same remains due and unpaid,

and complainant now holds said certificates of stock as receiver as aforesaid.   And on or about the 14th day of August, 1893, the complainant, by his attorney, notified the officers of said Scatcherd Lumber Company, at Decatur, Ala., that he, as such receiver, held and owned said certificates of stock under the transfer as above stated.

In June, 1893, the First National Bank of Hillsboro, Ohio, instituted suit by attachment in the Decatur city court against said Overman on certain judgments, which it had previously obtained against said Overman for about $9,000, and on June 20, 1893, the writ of attachment which was issued in said case was levied by the sheriff of said county of Morgan, on the said stock in the said Scatcherd Lumber Company, which had theretofore been transferred and assigned as above stated to the Citizens' National Bank, and complainant alleges that said First National Bank, at the time this attachment was sued out and levied upon said stock, had notice and knowledge of said transfer and assignment of it by said Overman to said Citizens' National Bank.

Said First National Bank obtained a judgment in its said attachment suit against said Overman and obtained an order for the sale of the said stock as the property of said Overman.   It is then averred that at the time said attachment was issued and the lien acquired by virtue of its levy, the said First National Bank had notice and knowledge of the fact that said stock was not the property of said Overman, but of the Citizens' Bank under said transfer and assignment by him to it; and that said First National Bank, notwithstanding these facts, has caused the sheriff of said Morgan county to advertise for sale said stock on the 6th day of November, 1893, in pursuance of process of execution and condemnation placed in his hands at the instance of the National Bank in its attachment suit.

The prayer of the bill was that said First National Bank, its agents, officers and attorneys, be enjoined from selling said stock under said attachment proceeding, and that said Scatcherd Lumber Company be enjoined from issuing any certificate or certificates for said stock in said company to any one except to complainant; and for such other, further and general relief as the facts and equities of the case entitle complainant to.

The bill was duly verified by the affidavit of complainant, and upon the filing thereof the chancellor directed a writ of injunction to issue upon bond being made. The bond was made, and the injunction issued accordingly. A decree *pro confesso* was taken against the defendant Overman. The Scatcherd Lumber Company answered the bill and disclaimed having any knowledge of the alleged transaction between the Citizens' National Bank and Overman, and also disclaimed all knowledge of whether or not the First National Bank had notice at the time its attachment was sued out, of said alleged transfer of said stock by Overman to the Citizens' National Bank. The First National Bank of Hillsboro filed its demurrer and motion to dismiss the bill for the want of equity, and to dissolve the injunction. The demurrer and motion having been overruled, it is unnecessary to set them out in detail on this appeal.

In its answer the First National Bank of Hillsboro alleged that if the certificates of stock were ever transferred to said Citizens' Bank, said transfer was never registered on the books of the Scatcherd Lumber Company, and no notice of such transfer was ever given to the officers of said Scatcherd Lumber Company, or to the First National Bank, until more than fifteen days after the levy of its attachment, as described in the bill. The answer also admitted the allegations of the bill as to the institution of the suit against Overman and the issue of the attachment and levy thereof on 348 shares of said stock standing on the books of the company in the name of Overman, 333 shares having been levied on on June 20th, and 15 shares June 24th, 1893 ; but denied that, at the time said attachment was sued out and levied, it or its officers or directors had any notice of said alleged transfer and assignment of said 348 shares of stock by Overman to the Citizens' Bank ; and that said First National Bank, at the time of the issue and levy of its attachment had no notice of the fact that said property was not the property of said Overman.

The evidence of the case is sufficiently shown in the opinion. On the submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was not entitled to the relief prayed for, and ordered the injunction dissolved, and the bill dismissed. From

this decree the complainant appeals, and assigns the same as error.

HUMES, SHEFFEY & SPEAKE, for appellant.—At the time the attachment was levied on the 333 shares of stock on June 20th, 1893, Overman had no leviable interest therein; and the transfer thereof to the Citizens Bank was certainly valid as between him and the bank, whether registered or not. The expiration of fifteen days thereafter and the failure within that time to have the transfer registered or recorded, did not invalidate or re-vest Overman with the title to the stock so as to make it liable to levy and sale for debt. "Whatever be the character or description of personalty subject to attachment, the extent to which the lien affects the thing is limited only by the extent of the defendant's property in the thing. The levy of the attachment only creates a lien upon the interest of the debtor who is sued." Again, "It is only the interest of the defendant in the property attached, which is affected by the levy of the writ."—1. Wade on Attachment, § § 30, 201; Kneeland on Attachment, 427. Title to stock passes without transfer on books of the company as between vendor and vendee, although clause in act of incorporation provides that stock shall be transferable only on books of the company.—18 Amer. & Eng. Encyc. of Law, 615-17; 23 Amer. & Eng. Encyc. of Law, 634 *et seq.*; 44 Amer. Dec. 472; 14 Amer. Dec. 526.

The Supreme Court of this State have recognized the principles of law above declared making the transfer valid as between the parties for the period of fifteen days, in *Berney National Bank v. Pinckard*, 87 Ala. 583, where they say: "We have ruled above that, under our statutes, Pinckard, DeBardeleben & Co. were allowed fifteen days after their purchase of the stock, within which to have it transferred on the corporation books, and that, failing to do so within that time, the stock became liable to levy under execution or attachment at the suit of any creditor of Davis, in whose name the stock stood on the books."

This stock of Overman was transferred upon certain terms and conditions expressed in the instrument made an exhibit to Overman's deposition, on the 8th day of June, 1893. On the next day the Comptroller took pos-

session of its assets, among others the certificates of stock. They were an asset of the bank for certain purposes. Section 5242 of the revised Statutes of the United States provides that no attachment shall be issued against a national bank before final judgment. It has been decided in a number of cases that an attachment cannot be issued at all against the property of an insolvent bank.—*Pacific Nat. Bank v. Mixter*, 124 U. S. 721; *Nat. Bank v. Colby*, 21 Wall. 609; *Harvey v. Allen*, 16 Blatch. 29.

The first National Bank before the issuance and levy of the attachment had notice of the transfer of the stock in question by Overman to the Citizens National Bank; or knowledge of facts and circumstances which if followed up would have led to notice of such transfer. This by reason of the fact that Smith, the cashier of the First National Bank, had such notice or knowledge. Notice to managing officer of a bank, actively engaged in its daily business, given during the banking hours, at its place of business, is notice to the bank.—12 Amer. St. Rep. 744; 15 Wallace 164; 42 N. W. Rep. 200; American Digest, 1889, 371, § 62; 1 Morse on Banks & Banking, § 166; *Loring v. Brodie*, 134 Mass. 453 *Duncan v. Jaudon*, 15 Wall. 165; *Mayhew v. Eames*, 3 B. & C. 601.

Even if notice comes to agent, not officially nor while acting for the bank in the business to which it relates, as if it is previous to his employment as agent, the bank is bound: *Provided*, (1st) the information is not privileged; (2nd) is is so recent and so circumstanced otherwise as to make it reasonably probable that the agent had it in his mind when acting for principal; and (3rd) agent's interest is not adverse to communication of knowledge to principal.—1 Morse on Banks and Banking, § 109; *The Distilled Spirits*, 11 Wall. 356; *Anketel v. Converse*, 17 Ohio St. 11; *Hart v. Bank*, 33 Vt. 252; *Blumenthal v. Brainerd*, 38 Vt. 410; *Cragie v. Hadley*, 99 N. Y. 131; Angell & Ames on Corporations, §§ 305, 309.

HARRIS & EYSTER, *contra*.—Is too well settled by the universal line of decisions, not only in our courts, but by all courts, that the burden of proving a disputed fact, rests in all cases, upon the party affirming its existence, and claiming to derive right and benefit from it.—*Lehman*

*v: McQueen*, 65 Ala. 570; *McWilliams v. Phillips*, 71 Ala.
80; *Shulman v. Brantley*, 50 Ala. 81. When the evi-
dence leaves a disputed question in doubt and uncer-
tainty, the fact cannot be regarded as established, and
the issue must be found against the party on whom the
*onus* rested.—*Garrett v. Garrett*, 64 Ala. 263.

The *onus* of proving that the First National Bank had
notice or knowledge of the transfer of the shares of
stock involved in this controversy is upon the com-
plainant. This burden has not been discharged.

There is no proof in the testimony what the duties of
Smith were as cashier of defendant; and while it is
admitted that notice to an agent in the transaction of his
*principal's business* operate as notice his principal, it is
well settled by the decisions of our Supreme Court, in
order to charge a corporation with *implied* notice, on ac-
count of actual notice to an officer or agent, it must be
shown that the notice to the officer or agent was commu-
nicated to him, or that he acquired it, while employed
within the scope of his duty and power in and about the
business of the corporation, and not while engaged in
the transaction of his private business, or in rendering
assistance to others, or through idle curiosity, or trying
to render assistance to his friends.—*Terrall v. Bank*,
12 Ala. 502; *Reid v. Bank*, 70 Ala. 199; 1 Waterman
on Law of Corporation, § § 135 *et seq*.

HEAD, J.—This case turns up the question whether
the First National Bank of Hillsboro, when its attach-
ment against the estate of Clarence M. Overman was
levied by the sheriff of Morgan county, Ala., upon the
shares of stock in controversy, was chargeable with no-
tice of the prior transfer of the shares by Overman to
the Citizens' National Bank of Hillsboro. The other
contentions, of either party, are without merit.

Under the management of Clarence M. Overman, its
president, The Citizens' National Bank of Hillsboro,
Ohio, failed, on the 9th day of June, 1893. The First
National Bank of Hillsboro, was then in business in the
same city. Overman was indebted to the Citizens' Na-
tional Bank in more than an hundred thousand dollars,
and to the First National, more than $9,000. The
Citizens National also owed the First National about
$27,000. Overman owned considerable property which

will be referred to further on. O. S. Price was cashier, Jas. H. Reece, assistant cashier, and J. J. Pugsley, vice-president of of the Citizens' National Bank. S. P. Scott was president, and Lyne S. Smith cashier of the First National Bank. Scott was a stockholder in the Citizens' National, and Smith was largely indebted to it. He, Smith, was a cousin to Price, the cashier of the Citizens' National, and they were accustomed to indorse for each other. Until July 2d (after the failure of the Citizens' National) Scott, the president of the First National, had very little part in its management, and Smith, the cashier, had practically the entire management of its affairs, and continued therein, until Scott took active management, July 2d. About June 6th, Mr. Betts, National Bank Examiner, began investigation of the condition of the Citizens' National Bank, and soon discovered it was probable he would have to close its doors; and about one o'clock P. M. on June 8th, he called on Smith, the cashier of the First National, in the latters' private office in that bank, and stated his apprehensions in regard to the Citizens' National, and advised him to put his own bank in order to stand a run if it should happen. The indications are that, pending the examiner's investigations, action was had by and between these two banks touching the condition of the Citizens' National, for on the 8th or morning of the 9th of June, money was loaned by the First National to the Citizens' National, on collaterals. Evidently, the transaction was had by and between Smith, as cashier and practically sole manager of the First National, and Overman, the president and prime manager of the Citizens' National. It was had without the knowledge, at the time, of Betts, the examiner. Pending the investigation, and up to the afternoon of June 9th, after the failing bank had been closed, Smith and Overman held several private interviews, at both banking houses. Betts observed them together, in private intercourse, in the Citizens' Bank, on the morning of the 8th, and also in the afternoon, after he had advised Smith to prepare for a run. Then again, at the same place, in the afternoon of June 9th. On the morning of June 9th, Overman, being the owner thereof, transferred and delivered to the Citizens' National Bank, to secure his indebtedness, the following shares of corporate stock, viz., 100 shares of

the McKeehan-Hiestand Grocery Company of Hillsboro, Ohio; 350 shares of the Scatcherd Lumber Company of Decatur, Alabama, 50 shares in the Citizens' National Bank, and 20 shares of the Hillsboro Gas and Electric Light Company. All these shares were of the par value of $100 per share, except the last twenty, which were $50. He, also, at the same time, conveyed his title and estate in and to about 80 acres of land in Finney county, Kansas; also lots Nos. 513 and 514, in Hillsboro; also about 182 acres of land in Liberty Township, Highland county, Ohio; all his interest in about 450 acres of land in Paint Township, same county and State, and assigned all his interest in the personal estate of Elias Overman, deceased, and other personal securities. This was all the property he owned, except an undivided one-half interest in a farm in Marshall Township—the farm being owned by him and said cashier, Smith, in equal interests. This undivided interest, he conveyed to Smith to be applied to his indebtedness to the First National Bank. Smith says he thinks this conveyance was made on the 8th. On that day the Citizens' National Bank transferred to the First National, securities very nearly sufficient to pay its indebtedness to the latter, amounting, as we have seen, to about $27,000. That occurred on the morning of June 8th. Smith says he made no effort to get from Overman any other security or securities for his indebtedness to the First National Bank. These two banks had, for a long time, had daily business intercourse. There was no clearing house in the city, and check balances were settled between them every day. Besides, they had many other monetary transactions. On the day of the failure, June 9th, the First National Bank obtained a judgment, in the court of common pleas, at Hillsboro, against Overman covering his indebtedness, and which now forms the basis of the present attachment.

It is in view of these conditions, that we must notice the testimony of Overman and Smith touching directly the question of notice to Smith, in his capacity of cashier and general manager of the First National Bank, of the transfer by Overman to the Citizens' National Bank of the stock in controversy, towit, the 350 shares of Scatcherd Lumber Company, of Decatur, Ala.

Overman testifies, on direct examination by complain-

ant: "On June 8th I had some talk with Lyne S. Smith, cashier of First National Bank, about the affairs of the Citizens' National Bank. I don't think I told him about any transfer then, but on the morning we closed I think I told him about the transfer, of which I think he already had knowledge. In talking with Mr. Smith, I know he and I thought that no record ought to be made of the transfers made on the preceding day; I mean records in the County Recorder's office. Mr. Smith advised that no such record of any transfer be made." On cross examination, he testified: "The transfers which Mr. Smith advised should not be put on record were transfers of real estate. I don't know that real estate was mentioned, but that would be the inference, as only conveyances of real estate would be recorded. I don't know that the term, 'real estate,' was used. My talk was had in the back office of the Citizens' Bank in the back room. My recollection is that Madison Betts, the bank examiner, and Mr. Pugsley and some other of the directors, Mr. John L. West, I think, and perhaps Mr. Spence, were present. I was informed on the morning of June 9th, that the conveyances I made in real estate had already been put on record, but I don't know of my own knowledge. I never examined the record. I had no conversation with Mr. Smith about what the transfers were. When, on June 9th, 1893, the record of the transfers was mentioned, I thought from the way in which he talked, that he knew what they were, and so no particular ones were mentioned. In none of my conversations with Smith was the stock in the Scatcherd Lumber Company mentioned specifically. Nothing was said about it, and I did not tell him that I had transferred it to the Citizens' National Bank." Re-examination: "All my conversations with Mr. Smith on June 8 and 9, 1893, were in the banking house of the Citizens' National Bank. I think, in one of those conversations, I mentioned that I had transferred my property to the Citizens' Bank, except the piece he (Smith) was interested in. The other piece I did not think of at the time. I told him that, as he owned one-half of the Marshall Township farm, I had thought it no more than right to transfer that to him, as I owed the First National Bank, understanding that he would apply it on my indebtedness to the First National Bank. In my

statement, on cross examination, that the stock in the Scatcherd Lumber Company was not specifically mentioned, I did not mean that it was not included in my general description to Mr. Smith of the transfer of my property. There was no specific property mentioned whatever—no real estate, stock or anything. I just told him I had made transfers of my property to the Citizens' National Bank, and wanted to transfer that to him.''

Smith testified as follows : ''Shortly after the failure of the Citizens' Bank, the First National Bank caused a suit in attachment to be brought against the said C. M. Overman in the city court of Decatur, Ala. The first information that I got that C. M. Overman had transferred or assigned to the Citizens' National Bank any certificates or shares of stock in the Scatcherd Lumber Company, of Decatur, Ala., I obtained through our attorneys after our attachment was made. I can't state as to the time. What I mean to say is this, that I had no knowledge that Mr. Overman had any stock in the Scatcherd Lumber Company until so informed by our attorneys. Our attorneys did not inform me that the Citizens' National Bank claimed it. I did not have any knowledge from any source that the Citizens' Bank claimed the stock of Overman in the Scatcherd Lumber Company until after the suit in attachment had been brought, but I can't say how long after, as I did not charge my mind with the dates ; to the best of my recollection it was several weeks after bringing the attachment suit. I do not think that any notice was ever served on me by the Citizens' Bank, or its receiver, that said Citizens' Bank claimed to be the owner of said Overman's stock in the Scatcherd Lumber Company. I was at the Citizens' National Bank on the 8th and 9th days of June, 1893, for the purpose of assisting them, if possible, out of their difficulties. On the 9th I was aware that said Overman was indebted to said bank, but not to the extent that he was. To the best of my recollection, I received no information from Mr. Overman on the 8th or 9th of June, 1893, at the banking house of the Citizens' Bank, that he had transferred his property to said bank, and I do not tnink I would have advised him not to put such transfer on record if I had been so informed. I have no recollection of giving him such advice. I never saw the paper which is attached to the original bill as

Exhibit A, nor the original, of which it purports to be a copy, before to-day.''

Scott, the president, and Richards, Barrett and Weaver, directors of the First National Bank, testified that they knew nothing of the transfer. Pugsley, the vice-president, and Spence, who Overman thought were present at his interview with Smith about the transfer, were not examined.

John L. West testified: ''On and prior to June 9, 1893, I was a director of the Citizens' National Bank of Hillsboro. I was at said bank on June 7th, 8th, and 9th. I was called in to assist in the investigation, settlement, etc., of the affairs of the bank. I was there as a director. I was sent for and went there about 5 o'clock P. M. on June 7th. I know Lyne S. Smith, who is cashier of the First National Bank of Hillsboro, Ohio. He was in the Citizens' Bank very frequently—I would say several times—in consultation with the officers of Citizens' Bank, and he offered assistance. He seemed to take a very active part in the matter and seemed to desire that the thing go on. Mr. Beecher, Mr. Betts and myself were there. Mr. Smith was there frequently in consultation with Mr. Overman after the transfer was made by Overman to the Citizens' Bank.''

On June 17th, 1893—eight days after the failure of the Citizens' Bank—J. B. Worley, who lived in Ohio, appeared before the clerk of the city court of Decatur, and as attorney for the First National Bank of Hillsboro, Ohio, applied for attachment against the estate of Overman, and made the affidavits required by the statute, as to the indebtedness and non-residence of Overman, and that to the best of his knowledge, information and belief, the defendant had not sufficient property within the State of his residence wherefrom to satisfy the debt. Attachment was issued and levied on the stock in question.

The foregoing is, substantially, all the evidence in the record necessary to the decision of the question under consideration. We have given it repeated consideration and discussion, and have reached a conclusion in accord with that of the chancellor. The evidence does not show actual notice of the transfer, and the complainant has not shown such a state of facts as discharges the burden resting upon him to prove that the First National

[Dangaix v. Lunsford.]

Bank was put upon inquiry, which, if followed up, would have led to knowledge of the transfer.

If the fifteen days limitation mentioned in section 1671 of the Code of 1886 (see the phraseology of that section as contained in section 2044 of the Code of 1876), applies to the time of the transfer of stock, and not to the time of the adoption of a by-law by the corporation requiring transfers to be made on the books of the corporation—a question not now considered—it exerts no influence upon the present case for the reason that the transfer was not registered within fifteen days.

Affirmed.